OCT 21 2015

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Case Type: Employment

Court File No.:_____

Julie Distel,

   Plaintiff,

vs.              **SUMMONS**

K Hovnanian Homes,

   Defendant.

---

THIS SUMMONS IS DIRECTED TO DEFENDANT K HOVNANIAN HOMES, AND ITS ATTORNEYS, Richard A. Ross, FREDRIKSON & BYRON, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402-1425.

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

      HALUNEN LAW
      1650 IDS Center
      80 South Eighth Street
      Minneapolis, MN 55402

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: October 21, 2015					HALUNEN LAW

								/s/ Clayton D. Halunen
								Clayton D. Halunen, #219721
								Barbara J. Felt, #228564
								Ross D. Stadheim, #392475
								1650 IDS Center
								80 South Eighth Street
								Minneapolis, MN  55402
								Telephone: 612.605.4098
								Facsimile: 612.605.4099
								halunen@halunenlaw.com
								felt@halunenlaw.com
								stadheim@halunenlaw.com

								*ATTORNEYS FOR PLAINTIFF*

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

Court File No.:_____

Julie Distel,

    Plaintiff,

vs.                                    **COMPLAINT AND JURY DEMAND**

K Hovnanian Homes,

    Defendant.

Julie Distel ("Plaintiff"), for her Complaint against K Hovnanian Homes, ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is resident of the City of Maple Grove, County of Hennepin, State of Minnesota.

2. Defendant is a business with its Minnesota headquarters located in the City of Minnetonka, County of Hennepin, State of Minnesota.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked as violations occurred in the City of Minnetonka, County of Hennepin, State of Minnesota and involve state law.

4. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and the facts giving rise to this action occurred within the borders of the State of Minnesota, County of Hennepin.

## FACTS

5. Plaintiff was employed by Defendant from June 4, 2012 to September 8, 2015. At the time her employment ended, Plaintiff was Defendant's Director of Marketing and Sales for the Minnesota Division. During the course of her employment, she was never formally coached, counseled, or warned about her performance. In fact, in her most recent performance review, Plaintiff received a "Solid Performance" rating.

6. On June 30, 2015, Plaintiff's supervisor, Jeffrey Parks, Division President, was terminated. As Parks said his goodbyes, he thanked Plaintiff for her years of service and stated that she was a pleasure to work with.

7. Shortly after Parks' termination, Scott Richter assumed the Division President role and became Plaintiff's supervisor. Immediately after his hire, Richter began treating Plaintiff differently because of her gender. Despite her years with the company and high-ranking position, Richter would constantly question the accuracy of the information he was getting from Plaintiff by calling on other male employees to verify. Richter would invite other males, such as Jim Hill and Marty Gergen, out to construction sites to show him model homes, despite that being Plaintiff's job duty under Parks. During one of Plaintiff's presentations, Richter chose to ask only Gergen follow-up questions, despite the presentation being Plaintiff's. If Plaintiff suggested assigning a woman employee an important task, Richter would direct Plaintiff to assign it to a male employee.

8. Richter also began immediately usurping Plaintiff's job duties. Richter would communicate directly with Plaintiff's subordinates and deliberately fail to include her on key communications necessary for her to perform her job. Eventually, Richter took away virtually all of Plaintiff's job duties to the point where she would come into work with nothing to do.

2

Richter then had the audacity to repeatedly ask Plaintiff questions like: "why are you here; what are you even doing for the company, and; why don't you go home?" Plaintiff would simply respond that she was there to work and if Richter decided to assign Plaintiff any tasks, she would be happy to perform them.

9. During the week of July 6, 2015, the first full week of Richter's employment, Plaintiff began showing Richter spreadsheets. After a few minutes, it became apparent that Defendant's system did not make sense to him. Richter decided to take out his frustration on Plaintiff by calling her a "useless woman."

10. Also during the week of July 6, 2015, Richter stated that he wanted to hire a new Director of Marketing and Sales, which was Plaintiff's position, because he needed "a guy that can do the job properly."

11. During the week of July 13, 2015, Richter asked Plaintiff a question about what the customer sees for pricing versus Defendant's internal reports. Plaintiff directed Richter to load Defendant's website, which he was unable to do. Richter then attempted to use his phone to view Defendant's website, which would still not load. Richter then became visibly angry at Plaintiff yelling that she was "just a useless woman" and that things at Defendant were "so messed up." Plaintiff again tried to explain that the information was available and that it was just a technical issue. Richter called Plaintiff "useless" again before the meeting ended.

12. During the week of July 20, 2015, Richter asked Plaintiff why she had not quit yet. Plaintiff replied that she loved her job and that she had a team of people who relied on her expertise and experience. Richter then stated that he wished that Plaintiff would just quit. After Plaintiff asked why she was not allowed to go with him to construction sites, Richter replied "you women should not be involved with construction items."

13. Also during the week of July 20, 2015, Richter informed Plaintiff that he had read her personnel file for no apparent reason and found a complaint from a coworker about Plaintiff wearing short skirts, for which she was not formally reprimanded for in any way. Richter then stated, "so where are all these short skirts I've been reading about!?"

14. During the week of August 24, 2015, Plaintiff reported to Erin Giuliano at Corporate Human Resources, that Richter was engaging in gender discrimination against her. Giuliano dismissed her complaint and stated that Minnesota was an "at will employment state" and invited Plaintiff to resign because there "is no law against [Richter] being mean." Not surprisingly, the company failed to conduct any investigation.

15. On August 25, 2015, Plaintiff discovered that she had been removed as an officer for the company. However, Plaintiff was still acting as the primary real estate broker for Defendant, as defined in Minn. Stat. § 82.55, subd. 15. Shortly after her discovery, she brought her removal up to Richter by telling him that the company had "illegally removed her as an officer for the company" because she was still acting as the primary real estate broker and signing off on purchase agreements for the company. Had this fact been disclosed, she would not have signed off on any purchase agreements after her removal as an officer because Minnesota law requires the primary real estate broker to also be listed as an officer for the company in Plaintiff's case. Richter was unconcerned and noted her objection. After discovering that she was not listed as an officer, Plaintiff did not sign off on any more purchase agreements because that would have violated law.

16. On September 8, 2015, Richter entered Plaintiff's office and shut the door. Richter stated that he planned to do sales "a little bit differently" going forward. Confused, Plaintiff asked if she was being fired. Richter replied that she was. Plaintiff then asked why. Richter

4

replied that he did not need to give her a reason. Plaintiff then gathered her things and left the premises. Plaintiff understands that she has since been replaced by Alan Devorak, a male.

17. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## CLAIMS

### COUNT ONE
### GENDER DISCRIMINATION IN VIOLATION OF
### THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

18. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to, terminating Plaintiff's employment, which materially affected the terms, conditions, and privileges of her employment because of her gender.

19. Plaintiff's gender was a motivating factor in her termination.

20. Defendant failed to take all reasonable steps to prevent the discrimination based on Plaintiff's gender from occurring.

21. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her gender.

22. The unlawful employment practices complained above were intentional and were performed by Defendant with malice and/or reckless indifference to anti-discrimination laws, which protect Plaintiff.

5

23.  As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT TWO
## VIOLATIONS OF THE MINNESOTA WHISTLEBLOWER ACT

Plaintiff realleges each and every paragraph of this Complaint.

24.  The Minnesota Whistleblower Act ("MWA") prohibits retaliation against employees for making good-faith reports of violations of law. Minn. Stat. § 181.932, Subd. 1 provides:

> An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) the employee ..., in good faith, reports a violation, or suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer or to any governmental body or law enforcement official;
>
> (2) the employee is requested by a public body or office to participate in an investigation, hearing, inquiry;
>
> (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason.

25.  Plaintiff reported violations of laws and rules adopted pursuant to law.

26.  The laws and rules that Plaintiff reported that Defendant violated include, but are not limited to:

- Minn. Stat. § 82.55, subd. 15 (in the case of a corporation, the primary broker must be an officer of the company who is individually licensed to act on behalf of the corporation).

6

- Minn. Stat. § 82.63 (an individual who holds a broker's license on behalf of a business entity must have an additional license and, unless meeting other requirements, must be an officer of the entity).

27. Defendant retaliated against Plaintiff as a result of her reported violation by terminating her employment.

28. The adverse employment actions as alleged herein constitute violations of the MWA, Minn. Stat. §§ 181.931 *et seq.*

29. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee.

30. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the MWA, which protects Plaintiff.

31. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT THREE
## REPRISAL DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

32. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to, terminating Plaintiff's employment, which materially

affected the terms, conditions, and privileges of her employment because of her report of gender discrimination.

33. Plaintiff's report of gender discrimination was a motivating factor in her termination.

34. Defendant failed to take all reasonable steps to prevent the retaliation based upon Plaintiff's report of gender discrimination from occurring.

35. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her report of gender discrimination.

36. The unlawful employment practices complained above were intentional and were performed by Defendant with malice and/or reckless indifference to anti-discrimination laws, which protect Plaintiff.

37. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed, and declared to be in violation of the rights secured to Plaintiff by state law.

b. That Defendant be required to make Plaintiff whole for its adverse, retaliatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c.  That Plaintiff be awarded front pay and the monetary value of any employment benefits she would have been entitled to as an employee of Defendant.

d.  That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e.  That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

f.  That Plaintiff be awarded punitive damages as permitted by statute.

g.  That Plaintiff be awarded any additional damages as permitted.

h.  That the Court award Plaintiff her attorneys' fees, costs and disbursements pursuant statute.

i.  That the Court grant such other and further relief as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE.

Dated: October 21, 2015

HALUNEN LAW

*/s/ Ross D. Stadheim*

Clayton D. Halunen, #219721
Ross D. Stadheim, #0392475
Barbara J. Felt #0228564
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
halunen@halunenlaw.com
stadheim@halunenlaw.com
felt@halunenlaw.com

*ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: October 21, 2015

*/s/ Ross D. Stadheim*
Ross D. Stadheim

10